UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

LACHLAN CARTWRIGHT,

                                                          Plaintiff,

    - against -

THE CITY OF NEW YORK; NEW YORK CITY
POLICE DEPARTMENT ("NYPD") OFFICER
DAVINE CLINTON; NYPD SERGEANT ALLISON
SPRAGUE; and NYPD MEMBERS JOHN and JANE
DOES # 1-8,

                                                          Defendants.

**COMPLAINT**

**Index No. 22-cv-7198**

------------------------------------------------------------------------ X

       Plaintiff LACHLAN CARTWRIGHT, by and through his attorneys, Gideon Orion Oliver and Cohen & Green P.L.L.C., as and for his Complaint in this matter, alleges as follows:

**PRELIMINARY STATEMENT**

       1.      On Easter Sunday, April 17, 2022, Lachlan Cartwright walked into the open door of The Players Cafe, a boutique store in New York City's West Village. He browsed and picked out some items for purchase before realizing there were apparently no staff in the store. After alerting a sister Players Cafe store to the situation, Mr. Cartwright put the items he'd picked out behind the counter along with a note with his name, cell phone number, and business card identifying him as Editor at Large at *The Daily Beast*.

       2.      Before Mr. Cartwright could leave the store, NYPD members arrived, apparently thinking they were responding to a burglary. Although Mr. Cartwright repeatedly explained what had happened, asking police to check the note or his phone records or talk with a store

1

representative, they refused, and instead handcuffed Mr. Cartwright and brought him to the NYPD's 6th Precinct to be processed on criminal charges.

3. While Mr. Cartwright was in custody at the 6th Precinct, the Players Cafe Store Manager arrived at the store and viewed surveillance video along with other evidence with a NYPD member or NYPD members, further confirming that there was no cause to arrest, hold, or charge Mr. Cartwright.

4. During Mr. Cartwright's arrest processing, a supervisor involved in processing Mr. Cartwright's arrest apparently spoke with someone from the office of the Department's Deputy Commissioner for Public Information ("DCPI"). A NYPD member told Mr. Cartwright: "They know who you are."

5. Rather than releasing Mr. Cartwright, whom the police involved by then knew, or should have known, had committed no violation of the law, and voiding his arrest, they fully processed him and released him with a desk appearance ticket that required him to appear to answer a criminal trespass charge.

6. Mr. Cartwright later learned from a colleague that, in a conversation with the colleague about his arrest, a DCPI official had referred to Mr. Cartwright as "not a good guy" and mentioned a May 29, 2020 interaction Mr. Cartwright had with NYPD members near Union Square Park at a protest in the wake of the murder of George Floyd while Mr. Cartwright was reporting on the protests, in which Mr. Cartwright had words with police because he felt they were being heavy-handed with journalists who had just been doing their jobs.

7. The Office of the District Attorney of New York County later declined to prosecute any charges against Mr. Cartwright. Mr. Cartwright now brings this litigation to shed light on the circumstances leading to his arrest, detention, and prosecution; to identify the NYPD

DCPI member consulted during his arrest processing; and to seek redress for Defendants' violations of his rights under the United States Constitution.

8. Additionally, on July 15, 2022, Mr. Cartwright filed a detailed Notice of Claim with Defendant City's Office of the Comptroller, and intends to amend this pleading to add claims under New York law at the appropriate time.

## JURISDICTION AND VENUE

9. The federal civil rights claims in this action are brought pursuant to 42 U.S.C. § 1983 for violations of the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States.

10. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988.

11. The Court has original jurisdiction over Plaintiff's 42 U.S.C. §§ 1983 and 1988 claims pursuant to 28 U.S.C. §§ 1331 and 1343.

12. Venue is proper pursuant to 28 U.S.C. § 1391, *et seq.,* in the Southern District of New York, where the Plaintiff resides, Defendant City of New York has offices, and the acts and omissions complained of herein occurred.

## DEMAND FOR A JURY TRIAL

13. Plaintiff demands a trial by jury in this action on each and every one of Plaintiff's claims for which a jury trial is legally available.

## PARTIES

14. At all times relevant herein, Plaintiff LACHLAN CARTWRIGHT (Mr. Cartwright; he/him) has been a resident of the City of New York, County of New York, and State of New York. Mr. Cartwright is employed as Editor at Large at *The Daily Beast*.

15. Defendant City of New York (the "City") is a municipal entity created and authorized under the laws of the State of New York. The City is authorized by law to maintain a police department, and does maintain the NYPD, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers.

16. At all times relevant herein, Defendants NYPD OFFICER DAVINE CLINTON, NYPD SERGEANT ALLISON SPRAGUE, and NYPD MEMBERS JOHN AND JANE DOES 1-8 (collectively, the "Individual Defendants"), were officers, employees, and agents of the NYPD who were personally involved in depriving Plaintiff of Plaintiff's rights, as set forth more fully below.

17. As described more fully below:

   a. NYPD member Doe 1 was Defendant Clinton's partner on April 17, 2022. Doe 1 was wearing a blue NYPD uniform and appeared to be male.

   b. NYPD members Does 2-3 arrived at The Players Cafe at the same time as Defendants Clinton and Doe 1. They were wearing blue NYPD uniforms.

   c. NYPD supervisor Doe 4 is a supervisor who arrived at The Players Cafe after Defendants Clinton and Does 1-3. Doe 4 was wearing a NYPD uniform with a white shirt and appeared to be male.

   d. NYPD member Doe 5 also arrived at The Players Cafe after Does 1-3. Doe 5 was wearing a blue NYPD uniform and appeared to be male.

   e. NYPD member Doe 6 spoke with The Players Cafe West Village Store Manager while Mr. Cartwright was at the NYPD's 6th Precinct.

   f. NYPD supervisor Doe 7 spoke with Doe 8 on a cell phone while Mr. Cartwright was under arrest at the 6th Precinct. Doe 7 was wearing a NYPD uniform with a white shirt and appeared to be an Asian-American male.

   g. NYPD member Doe 8 was assigned to the office of the NYPD's Deputy Commissioner for Public Information ("DCPI") and spoke with Doe 7 and/or other NYPD members about Mr. Cartwright on April 17, 2022.

18. At all times hereinafter mentioned, the Individual Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

19. Each and all of the acts and omissions of the Individual Defendants alleged herein occurred while said Individual Defendants were acting within the scope of their employment by the Defendant City.

20. The Individual Defendants were duly appointed and acting officers, servants, employees, and agents of Defendant City who were acting for, and on behalf of, and with the power and authority vested in them by Defendant City, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

21. The Individual Defendants were each and all responsible, in whole and/or in part, for the planning for and/or creation, promulgation, implementation, and/or enforcement of the unconstitutional policies, practices and/or customs complained of herein, and/or condoned, acquiesced in, adopted, and/or approved of the same, through their acts and/or failures to act, as set forth more fully below.

22. At all times relevant herein, as set forth more fully below, the Individual Defendants' actions and/or failures to act were malicious, intentional, knowing, and/or with a deliberate indifference to or a reckless regard for the natural and probable consequences of their acts and/or omissions.

23. Although they were aware of the conduct, present for it, and knew or should have known it was unconstitutional, at no time did any of the Defendants, or any other member of the

NYPD, take any steps to intervene in, prevent, or otherwise limit the unconstitutional conduct engaged in by their fellow officers.

## STATEMENT OF FACTS

24. Shortly before noon on Easter Sunday, April 17, 2022, Mr. Cartwright lawfully entered the open door of The Player's Cafe, a West Village boutique store.

25. Mr. Cartwright browsed and chose a number of items to buy.

26. Mr. Cartwright had not seen, and could not find, anyone working in the store. He started to worry that the store was unattended.

27. At around 12:15 p.m., Mr. Cartwright sent a message to the store's Instagram account that said:

> G'day, I'm currently in your store on bleecker street and want to buy some things but there is no where [sic] here to help me? I've been here for last 20mins. The door was open but there is no staff member here. Is someone coming back to the store? This is very odd. Can you please call me? [PHONE NUMBER OMITTED] Cheers

28. At around 12:19 p.m., Mr. Cartwright called the number published on the West Village store's website. There was no answer.

29. At around 12:21 p.m., Mr. Cartwright called the sister Players Cafe store in West Palm, Florida, and spoke with a representative there.

30. Mr. Cartwright explained that he was in the open West Village store but that he could not find anyone working there.

31. The Players Cafe representative at the sister store was thankful and said she would call the West Village Store Manager.

6

32. At around 12:29 p.m., the West Palm, Florida Players Cafe store representative called Mr. Cartwright to again express thanks for his alerting them to the open and unattended West Village store, and to let him know that the West Village Store Manager was on her way.

33. Mr. Cartwright waited in the store for the Store Manager to arrive. He did not want to leave the store unattended, and he still wanted to buy the items he had picked out.

34. He eventually decided to leave the store and come back later.

35. Mr. Cartwright then wrote a note to the Store Manager, put the items he had picked out to buy into a basket with the note along Mr. Cartwright's business card, and put the basket behind the counter.

36. The business card identified him as Editor at Large at *The Daily Beast* and provided his phone numbers and contact information.

37. The note said:

> HI! I REALLY WANT TO BUY THESE ITEMS. I STOPPED BY AND NO ONE WAS THERE SO I CALLED YOUR OTHER STORE AS I WAS CONCERNED IF YOU WERE OK. CAN YOU PLEASE CALL ME […] SO CAN WALK BACK AND PAY YOU. MY CELL IS…[PHONE NUMBER OMITTED]. THANK YOU! LACHLAN

38. Before Mr. Cartwright left the store, at some time after around 12:30 p.m. and before around 12:39 p.m., four NYPD members – Officer Davine Clinton; his partner, NYPD Member Doe 1; and two others, NYPD Members Does 2-3 – entered the store.

39. At least one NYPD member said something about a burglary.

40. After Officer Clinton and NYPD members Does 2-3 entered the store, Mr. Cartwright immediately told Clinton and Does 2-3 in sum that there had been no burglary, but rather a mix-up, that he was a customer who wanted to pay for the items he had picked out, that the store knew he was there, and the Store Manager was on the way.

41. Mr. Cartwright also asked them to look at the note he had left behind the counter nearby, the call history on his cell phone, and his Instagram messages, which reflected his communications with the store.

42. Instead of investigating, Officer Clinton and Does 1-3 did not respond to Mr. Cartwright's requests, but rather detained him without consent, probable cause, or lawful justification.

43. Within a few minutes, other NYPD members arrived, including two in plain clothes, several others wearing blue uniforms, NYPD Supervisor Doe 4, and NYPD member Doe 5.

44. Mr. Cartwright told Doe 4 and the other NYPD members present what he had told Clinton and Does 1-3 and asked that they look at the note he had left and the proof on his cell phone reflecting his communications with the store.

45. Again, instead of investigating, Clinton and Does 1-4 – along with other NYPD members present - continued to detain Mr. Cartwright.

46. Between 12:39 and 12:41 p.m., Mr. Cartwright missed three calls from the Store Manager, who was then on her way to the store.

47. A member of the public came to the door of the store and appeared to film the NYPD members interacting with Mr. Cartwright.

48. Doe 4 then told that person in substance that the store was a "crime scene" and that there had been a "burglary" and they had caught the "perp."

49. Alarmed that the police were ignoring and refusing to investigate his statements of innocence, Mr. Cartwright again asked them to look at the note he had left, speak with the store representatives, or otherwise confirm that he was innocent.

50. The NYPD members did not respond to his requests and instead continued to detain Mr. Cartwright.

51. NYPD member Doe 5, who was wearing a blue uniform and appeared to be male, told Mr. Cartwright, in sum: "This isn't good for us and it isn't good for you" – referring to the person who was filming them – and that the police would be taking him to the local precinct.

52. Doe 1 then rear-cuffed Mr. Cartwright with metal handcuffs.

53. He and Officer Clinton put Mr. Cartwright in the back of a marked NYPD squad car, which rushed to the NYPD's 6th Precinct with lights and sirens on.

54. During the ride, Mr. Cartwright again told the police that he was an innocent Good Samaritan and repeated his requests that the police investigate his statements.

55. The NYPD members did not even bother to take the note Mr. Cartwright had left at the store.

56. Upon arriving at the NYPD's 6th Precinct, Officer Clinton and Doe 1 presented Mr. Cartwright to a NYPD Sergeant at the desk.

57. Upon information and belief, that was Defendant NYPD Sergeant Allison Sprague.

58. At the 6th Precinct desk, Mr. Cartwright repeated that he was innocent, along with his requests that the NYPD members investigate his statements. Clinton, Doe 1, and Sprague did not respond.

59. Clinton and/or Doe 1 then searched Mr. Cartwright, seized some of his property, and lodged him in a cell.

60. Soon after Mr. Cartwright arrived at the NYPD's 6th Precinct, the Store Manager had arrived at the store and viewed security footage with at least NYPD member Doe 6.

61. Upon information and belief, the security footage confirmed what Mr. Cartwright had told The Players Cafe representatives he had spoken with on the phone, as well as all of the NYPD members he had interacted with.

62. Upon information and belief, the Store Manager informed Doe 6 and/or other NYPD members that The Players Cafe did not want to press charges.

63. Nevertheless, Clinton, Sprague, and the other NYPD members who had Mr. Cartwright in their custody did not release Mr. Cartwright at that time.

64. After some time in the cell, Mr. Cartwright was worried about the impact the arrest would have on work deadlines he was responsible for as Editor at Large at *The Daily Beast*, so he asked to make a phone call.

65. At that time, Mr. Cartwright called and spoke with his editor.

66. Around a couple of hours later, another NYPD member, Doe 7, who was wearing a white shirt and appeared to be an Asian-American male, approached Mr. Cartwright, and asked him if he had his "NYPD press credentials."

67. Doe 7 was talking on a cell phone.

68. Upon information and belief, Doe 7 was speaking with Doe 8, a member of the office of the NYPD's Deputy Commissioner for Public Information ("DCPI").

69. Mr. Cartwright later learned that, while he was at the 6th Precinct, one of his colleagues at *The Daily Beast* had spoken with a DCPI member who informed him, in substance, that Mr. Cartwright was known to DCPI and was "not a good guy."

70. The DCPI member referenced a May 29, 2020 interaction Mr. Cartwright had with NYPD members near Union Square Park at a protest in the wake of the murder of George Floyd while Mr. Cartwright was reporting on the protests for *The Daily Beast*.

71. During that interaction, Mr. Cartwright had words with police because he felt they were being heavy-handed with journalists who had just been doing their jobs.

72. When Mr. Cartwright asked Officer Clinton who Doe 7 had been on the phone with, Officer Clinton told Mr. Cartwright it was DCPI.

73. When Mr. Cartwright asked why Doe 7 had been on the phone with DCPI, Officer Clinton said in substance: "They know who you are."

74. A short time later, Officer Clinton had left the room Mr. Cartwright was in, but stayed within earshot. Mr. Cartwright heard Officer Clinton say words to the effect of, "This is wrong," to which another voice responded: "Just do it."

75. Officer Clinton soon returned to Mr. Cartwright and told Mr. Cartwright that he would be charged with Criminal Trespass in the Third Degree.

76. At approximately between 3:30 and 4:00 p.m. on April 17, 2022, after around between 3 and 4 hours under NYPD arrest, Officer Clinton and Sgt. Sprague issued Mr. Cartwright a Desk Appearance Ticket ("DAT") bearing DAT Serial Number 006-00127 and released him.

77. The DAT commanded Mr. Cartwright to appear in New York City Criminal Court on May 5, 2022 related to an "Offense Charged" of New York Penal Law ("PL") § 140.10(a), Criminal Trespass in the Third Degree.

78. PL § 140.10(a) criminalizes entering or remaining unlawfully on a building or real property which is fenced or otherwise enclosed in a manner to exclude intruders.

79. However, as Mr. Cartwright had been telling them, and as Officer Clinton and the other NYPD members involved well knew when issuing the DAT, Mr. Cartwright had not entered or remained unlawfully at The Players Cafe at all.

80. The Vice President of The Players Cafe called the NYPD's 6th Precinct to confirm that he had been released and to reiterate to the NYPD that – as the Store Manager had already told them, and as they knew – The Players Cafe had neither grounds for nor intent to press charges against Mr. Cartwright.

81. In a letter she later penned, the store's Vice President said: "Mr. Cartwright acted as a Good Samaritan with intent to protect a local business. His efforts are appreciated and should be deemed as such."

82. After Mr. Cartwright's release, Mr. Cartwright hired legal counsel, including to represent him in connection with his criminal prosecution and his May 5, 2022 appearance pursuant to the DAT.

83. On April 20, 2022, Mr. Cartwright's attorney asked that the Office of the District Attorney for New York County ("DANY") change that appearance date in light of Mr. Cartwright's long-standing plans to be out of the country that week.

84. On April 21, 2022, DANY declined to prosecute any charges related to Mr. Cartwright's April 17th arrest, on grounds consistent with Mr. Cartwright's innocence.

85. Since Mr. Cartwright's April 17, 2022 arrest and subsequent prosecution, Mr. Cartwright has suffered, and continues to suffer, emotional distress. For example, Mr. Cartwright has had difficulty sleeping and has suffered panic attacks. After the incident, Mr. Cartwright has sought mental health treatment, which he currently receives on an ongoing basis.

## FIRST CLAIM FOR RELIEF

**Unlawful Seizure / False Arrest**
***Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Under the Fourth and Fourteenth Amendments to the United States Constitution***

**Against Defendants Clinton, Sprague, and Does 1-8**

86. Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

87. Defendants did not have probable cause to seize, detain, or arrest Plaintiff.

88. Defendants seized Plaintiff without a written judicial warrant authorizing them to do so.

89. Defendants' seizure of Plaintiff was without privilege or lawful justification.

90. Plaintiff did not consent to, and was conscious of the confinement by, Defendants.

91. As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of Plaintiff's federal, state, and/or other legal rights; caused Plaintiff's bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

92. Defendants' conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## SECOND CLAIM FOR RELIEF

**For Violations of Plaintiff's First Amendment Rights,
Including Under Retaliation and Time/Place/Manner Theories of Liability**
*Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Under the First and Fourteenth Amendments to the United States Constitution*

**Against Defendants Clinton, Sprague, and Does 1-8**

93. Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

94. Defendants engaged in the acts and omissions complained of herein in retaliation for Plaintiff's protected First Amendment-protected speech and/or conduct.

95. Defendants engaged in the acts and omissions complained of herein in order to prevent and/or discourage Plaintiff from engaging in similar protected conduct in the future.

96. Defendants engaged in the acts and omissions complained of herein relevant to Plaintiff's First Amendment-based claims with malice.

97. Defendants imposed restrictions on Plaintiff's protected speech and/or conduct that violated Plaintiff's First Amendment rights, including, but not limited to, in retaliating against Plaintiff for engaging in protected conduct by subjecting Plaintiff to false arrest, use of force, excessive detention, and violations of Plaintiff's fair trial rights, and by otherwise violating Plaintiff's rights and engaging in the acts and omissions complained of herein.

98. As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of Plaintiff's federal, state, and/or other legal rights; caused Plaintiff's bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

99. Defendants' conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

### THIRD CLAIM FOR RELIEF

**Excessive Force**
*Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Under the Fourth and Fourteenth Amendments to the United States Constitution*

**Against Defendants Clinton and Doe 1**

100. Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

101. Defendants' use of force against Plaintiff was unjustified and objectively unreasonable, taking into consideration the facts and circumstances that confronted Defendants.

102. As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of Plaintiff's federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering,

psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

103. Defendants' unlawful conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

### FOURTH CLAIM FOR RELIEF

### Deprivation of Fair Trial Rights
*Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Protected Under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution*

### Against Defendants Costello, Sprague, and Does 7 and 8

104. Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

105. Upon information and belief, Defendant Clinton fabricated evidence of a material nature – namely, allegations that Mr. Cartwright had committed Criminal Trespass in the Third Degree – that was likely to influence a jury's decision, and intentionally forwarded that evidence to DANY, as a result of which Plaintiff suffered, among other injuries, deprivations of liberty and/or property.

106. As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of Plaintiff's federal, state, and/or other legal rights; caused Plaintiff's bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

107. Defendants' conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

### FOURTH CLAIM FOR RELIEF

15

## Municipal Liability
*Pursuant to 42 U.S.C. 1983 and <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978) for Defendants' Violations of Plaintiff's Rights Under the First, Fourth, and Fourteenth Amendments to the United States Constitution*

### Against Defendant City of New York

108. Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

109. Defendant City has known, or should have known, about the Individual Defendants' violations of Mr. Cartwright's rights since either the date of the incident on April 17, 2022, or soon thereafter.

110. For example, on July 15, 2022, Mr. Cartwright filed a detailed Notice of Claim with Defendant City's Office of the Comptroller.

111. Additionally, on July 23, 2022, *The New York Daily News* ran an article by John Annese entitled "'Daily Beast' reporter says NYPD wrongly arrested him at NYC store because press office didn't like his George Floyd protests coverage" regarding Mr. Cartwright's experiences and Notice of Claim (available online at: [https://www.nydailynews.com/new-york/nyc-crime/ny-journalist-suing-nypd-arrest-boutique-20220723-qkvcivn7g5e25bnn75w4wvanlu-story.html](https://www.nydailynews.com/new-york/nyc-crime/ny-journalist-suing-nypd-arrest-boutique-20220723-qkvcivn7g5e25bnn75w4wvanlu-story.html)) (last accessed August 17, 2022).

112. All of the wrongful acts or omissions complained of herein demonstrate Defendant City's deliberate indifference to Plaintiff's rights secured by the First, Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, as evidenced by Defendant City's failures, and the failures of the City's supervisory and policymaking agents, to supervise and/or discipline the involved NYPD members, despite that Defendant City knew or should have known about the Individual Defendants' wrongful acts, as described herein.

113. As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of Plaintiff's federal, state, and/or other legal rights; caused Plaintiff's bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

114. Defendants' conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## **DEMAND FOR JUDGMENT**

WHEREFORE, Plaintiff demands judgment against the Individual Defendants and the City of New York as follows:

i. Actual and punitive damages against the Individual Defendants in amounts to be determined at trial;

ii. Actual damages in an amount to be determined at trial against the City of New York;

iii. Statutory attorney's fees, disbursements, and costs of the action pursuant to, *inter alia,* 42 U.S.C. § 1988 and New York common law; and

iv. Such other relief as the Court deems just and proper.

Dated: Brooklyn, New York
       August 23, 2022

**GIDEON ORION OLIVER**

_____
277 Broadway, Suite 1501
New York, NY  10007
t: 718-783-3682
f: 646-349-2914
Gideon@GideonLaw.com

**COHEN&GREEN P.L.L.C.**

By: _____
Elena L. Cohen
J. Remy Green

1639 Centre Street, Suite 216
Ridgewood (Queens), NY 11385
  t: (929) 888-9480
  f: (929) 888-9457
  e: elena@femmelaw.com
     remy@femmelaw.com
     jessica@femmelaw.com